62 Cal.Rptr.3d 788 (2007)
153 Cal.App.4th 358
The PEOPLE, Plaintiff and Respondent,
v.
Malik Ali MUHAMMAD, Defendant and Appellant.
No. A110774.
Court of Appeal of California, First District, Division Five.
July 16, 2007.
*789 Candace Hale, under appointment by the Court of Appeal, Sausalito, for Defendant and Appellant.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and John R. Vance, Jr., Deputy Attorneys General for Plaintiff and Respondent.
Certified for Partial Publication.[*]
SIMONS, J.
Penal Code section 646.9[1] sets out in several subdivisions the definition of stalking as well as alternate penalties for the offense hat depend upon the stalker's criminal history. Thus, in subdivision (a) stalking is defined and an alternate misdemeanor ©r felony punishment of up to three years in prison is prescribed. A felony sentence of up to four years under subdivision (b) or five years under subdivision (c) is imposed if subdivision (a) is violated at a time when a valid restraining order protecting the victim from the accused is outstanding or the accused has certain specified prior convictions. Defendant Malik Ali Muhammad was convicted by jury trial of stalking (§ 646.9, subd. (a)) (hereafter section 646.9(a)) (count 1); stalking in violation of a restraining order (§ 646.9, subd. (b)) (hereafter section 646.9(b)) (count 2); stalking with a prior terrorist threats conviction (§ 646.9, subd. (c)(1)) (hereafter section 646.9(c)(1)) (count 3); stalking with a prior felony stalking conviction (§ 646.9, subd. (c)(2)) (hereafter section 646.9(c)(2)) (count 4); and misdemeanor criminal contempt (§ 166, subd. (a)(4)) (count 5). He admitted a prior strike allegation (§§ 1170.12, subds.(a)-(d), 667; subds. (b)-(i)) and was sentenced to 10 years in state prison.
On appeal, defendant contends he was erroneously convicted of counts 1, 2 and 3 because subdivisions (a), (b), (c)(1) and (c)(2) of section 646.9 do not describe four separate offenses but describe alternate punishments for the single offense of stalking. He also contends the court committed judicial misconduct and instructional and sentencing error. In the published portion of this opinion, we conclude defendant's claim regarding his stalking convictions is correct and order the convictions on counts 1, 2 and 3 stricken. In the unpublished portion, we affirm the conviction on count 4, but vacate the aggravated term imposed by the trial court and remand for resentencing.

Background
In September 2001, defendant and the victim, Ivory Jean Hart, began a dating relationship that she ended six or seven *790 months later. Hart was employed as a financial center manager and served as a vice president of Citibank (the bank).
In April 2003, defendant was convicted of stalking (§ 646.9(a)) and making terrorist threats (§ 422) stemming from acts[2] committed against Hart between September and October 2002. In August 2003, defendant was placed on probation and a 10-year restraining order issued against him, prohibiting his contact with Hart and her employer.

Current Offenses
In December 2003, Hart received over 50 hang-up phone calls. On December 17, she received two calls to her cell phone from the 916 area code, and the next day received a call on her home phone from defendant's Sacramento phone number.
On January 7, 2004, defendant called the bank's ethics hotline to report that Hart had been smoking marijuana, using non prescription sleeping pills and Vicodin and had marijuana delivered to the bank. On January 13, defendant again wrote to the bank regarding Hart's "habitual narcotics usage and addiction." On January 16, he wrote to the bank attaching a warning to the bank's customers of Hart's habitual marijuana use and he threatened to publish the warning to bank customers on March 1. On January 22, he wrote to the bank "strongly" suggesting that Hart undergo drug testing and a polygraph examination so she could "come to grips with her problem." On February 4, in response to a letter from the bank informing defendant that his allegations were untrue and would no longer be investigated, defendant wrote the bank stating he would distribute the aforementioned warning. On February 6, defendant wrote to the bank's chief executive officer (CEO) in New York regarding Hart's drug use. In late February, he was arrested and remained in custody until his release on January 13, 2005.
On May 24, 2004, defendant again wrote to the CEO attaching photos of Hart and stating he was facing imprisonment as a result of his prior attempt to provide information to the bank. On that same date, defendant was sentenced to prison for a violation of the probation imposed following his convictions for stalking and making terrorist threats in April 2003. The following day (May 25), defendant left a telephone voice mail message at the `Alameda County prosecutor's office stating that for "the rest of [his] life" defendant would continue to publicize that Hart is a marijuana addict, but he would never use any violence or threats of violence.
On May 27, 2004, defendant again wrote to the bank's CEO stating that all future communications regarding Hart's criminal behavior would be sent directly to bank customers and the media. On December 7, 2004, defendant wrote to the Alameda County District Attorney's office* summarizing defendant's concerns about the judicial system and Hart's use of illegal narcotics. On the same day, defendant again wrote to the CEO stating he intended to expose any attempt by the bank to conceal evidence of Hart's criminal conduct, attaching his letter to the district attorney's office.
Defendant was an inmate at San Quentin prison from June 7, 2004, until he was paroled in January 2005. Prior to being paroled, defendant objected to the parole condition prohibiting his contact with Hart and her family, friends and employer, but nonetheless signed an agreement to his parole conditions.
Hart testified that after each of defendant's threats, she was fearful that he *791 would follow through on them and she would lose her job. She was also fearful that he would kill her. She said she had trouble sleeping, was seeing a psychotherapist and taking antidepressant medication. A San Quentin correctional counselor testified that when Hart was informed of defendant's upcoming parole, she was "extremely" fearful and anxious.

The Defense
Defendant testified he had been an Oakland police officer, after which he went to law school. He worked as a deputy district attorney and then practiced as a defense attorney until 1999. He was eventually disbarred. Thereafter he taught at "Cal State Hayward."
Defendant admitted making all the telephone calls to Hart except for the December 2002 call. He said he made the calls to Hart when he was drinking and did not intend to frighten, harm, or kill her. He said he merely intended to unleash his anger and frustration and was now ashamed and embarrassed for leaving the messages. Defendant also admitted writing the letters to the bank out of concern for Hart's drug use and because the district attorney's office would not investigate.
Defendant said after being placed on probation on August 14, 2003, he was never provided with the terms and conditions of his probation, and did not receive them until mid-September. He said his calls and letters to the district attorney's office were to clarify the difference between the protective order issued against him and the court's minute order, and to express frustration "for the way that this entire matter had been handled." He said he objected to the parole conditions because he could not contact or sue the bank.

Discussion

I. Section 646.9

Defendant was convicted as charged in count 1 of simple stalking (§ 646.9(a)), in count 2 of stalking in violation of a court order (§ 646.9(b)), in count 3 of stalking with a prior conviction for making terrorist threats (§ 646.9(c)(1)), and in count 4 of stalking with a prior conviction for stalking (§ 646.9(c)(2)).[3] Each of the four stalking counts involved the identical course of conduct committed against Hart between December 17, 2003, and December 10, 2004. The court sentenced defendant to a five-year upper term prison sentence on count 4 that it doubled under the "three strikes" law, and stayed imposition of sentence on counts 1 through 3 pursuant to section 654.[4]
Section 646.9 provides, in relevant part:
"(a) Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and *792 imprisonment, or by imprisonment in the state prison.[5]
"(b) Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years.
"(c)(1) Every person who, after having been convicted of a felony under Section 273.5, 273.6, or 422, commits a violation of subdivision (a) shall be punished by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or five years.
"(2) Every person who, after having been convicted of a felony under subdivision (a), commits a violation of this section shall be punished by imprisonment in the state prison for two, three, or five years. [¶] ...
"(e). For the purposes of this section, 'harasses' means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.
"(f) For the purposes of this section, `course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose...."
The heart of the parties' dispute focuses on whether subdivisions (a), (b), (c)(1) and (c)(2) of section 646.9 define separate substantive offenses, each with its own distinct elements. Defendant argues they do not and, instead, merely define the one substantive offense of stalking, with enhancements or alternative punishments for that offense. Thus, he argues his convictions on counts 1 through 3 must be vacated.[6] The People respond that these subdivisions describe separate substantive offenses, and, for this reason, section 954 permits multiple convictions. Section 954 provides, in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense ... under separate counts.... The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged...." (Italics added.) Thus multiple charges and multiple convictions can be based on a single criminal act, if the charges allege separate offenses. (People v. Ryan (2006) 138 Cal.App.4th 360, 368, 41 Cal.Rptr.3d 277.)
In resolving this dispute, we find People v. Kelley (1997) 52 Cal.App.4th 568, 60 Cal.Rptr.2d 653 instructive. In Kelley, the defendant, who previously had been prosecuted and convicted of misdemeanor contempt (§ 166, subd. (a)(4)) for violating a restraining order, was charged with stalking *793 in violation of the same restraining order under section 646.9(b). (Kelley, at pp. 574-575, 60 Cal.Rptr.2d 653.) As Kelley explained, the double jeopardy clause of the Fifth Amendment prohibits a person from being prosecuted twice for the same offense or any included offense, and the test is whether each offense contains an element the other does not. (Kelley, at p. 576, 60 Cal.Rptr.2d 653.) The defendant argued that his prosecution for stalking violated the prohibition against double jeopardy because the crime of stalking in violation of a restraining order contains all the elements of the crime of contempt for violating that restraining order. (Id. at p. 576, 60 Cal.Rptr.2d 653.) In rejecting the argument, the court stated, "In making this argument, [the defendant] incorrectly assumes section 646.9 defines the crime of stalking in violation of a restraining order. The section merely defines stalking. The provisions relating to the violation of a restraining order do not define a crime. They merely create a punishment enhancement. As such, they are not to be considered in the double jeopardy analysis. [Citation.] 'Absent these provisions, the crimes are distinct and the constitutional prohibition against double jeopardy was not violated." (Kelley, at p. 576, 60 Cal. Rptr.2d 653, fn. omitted; see People v. Markley, supra, 138 Cal.App.4th at p. 244, 41 Cal.Rptr.3d 257 [§ 646.9(c)(2) provides an "alternative sentencing scheme" if the defendant has suffered a previous stalking conviction]; People v. McClelland (1996) 42 Cal.App.4th 144, 152, 49 Cal.Rptr.2d 587 [§ 646.9(b) serves the legislative purpose of providing "enhanced punishment to those stalkers who have been ordered to refrain from such conduct in civil proceedings, and hence, have been warned that their behavior is unacceptable"].)
The People assert Kelley is "wrong" and that the court failed to explain its conclusion that section 646.9(b) does not define a crime. Relying on the recent Supreme Court decision in People v. Corpuz (2006) 38 Cal.4th 994, 44 Cal.Rptr.3d 360, 135 P.3d 995, they argue that subdivisions (a), (b) and (c) of section 646.9 define different offenses because each has an element different from the other. However, Corpuz considered only whether a particular "stay away" order imposed as a condition of probation fell within the "any other court order" language of section 646.9(b), and held that it did. (Corpuz, at pp. 997, 1000, 44 Cal.Rptr.3d 360, 135 P.3d 995.) At the outset of its discussion, Corpuz cited the language of section 646.9(a) and (b) and stated that section 646.9(a) "describes a `wobbler,' offense" and section 646.9(b) "describes a straight felony offense." (Corpuz, at p. 997, 44 Cal.Rptr.3d 360,135 P.3d 995.) The People rely on this statement as if it were a holding by our Supreme Court that subdivisions (a) and (b) of section 646.9 describe "different crimes."; But that question was not raised in Corpuz, much less resolved by that decision; the People's reliance on Corpuz for that proposition is misplaced. (People v. Superior Court (Gaulden) (1977) 66 Cal.App.3d 773, 777, 136 Cal.Rptr. 229 [cases are not authority for propositions not expressly considered therein], disapproved on other grounds in People v. Sumstine (1984) 36 Cal.3d 909, 919, fn. 6, 206 Cal.Rptr. 707, 687 P.2d 904.)
Our conclusion that subdivisions (a), (b) and (c) of section 646.9 do not create separate offenses is confirmed by examining the definition of the terms "offense," "enhancement," and "penalty provision."
A substantive "crime or public offense" is defined as "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: [¶] 1. Death; [¶] 2. Imprisonment; [¶] 3. Fine; [¶] 4. Removal from office; or *794 [¶] 5. Disqualification to hold and enjoy any office of honor, trust or profit in this State." (§ 15.)
"By definition, a sentence enhancement is `an additional term of imprisonment added to the base term.'" (Robert L. v. Superior Court (2003) 30 Cal.4th 894, 898-899, 135 Cal.Rptr.2d 30, 69 P.3d 951, quoting Cal. Rules of Court, rule 4.405(c) (now rule 4.405(3)) & People v. Jefferson (1999) 21 Cal.4th 86, 101, 86 Cal.Rptr.2d 893, 980 P.2d 441.)[7]
"`[A] penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances. A penalty provision is separate from the underlying offense and does not set forth elements of the offense or a greater degree of the offense charged. [Citations.]'" (Robert L. v. Superior Court, supra, 30 Cal.4th at p. 899, 135 Cal. Rptr.2d 30, 69 P.3d 951, quoting People v. Bright (1996) 12 Cal.4th 652, 661, 49 Cal. Rptr.2d 732, 909 P.2d 1354.)
Despite language to the contrary in Kelley, we conclude that subdivisions (b), (c)(1) and (c)(2) of section 646.9 are not sentence enhancements; they clearly do not add an additional term of imprisonment to the base term.
"The California Supreme Court has recognized, however, that statutory provisions which are not `enhancements' in the strict sense are nevertheless `penalty provisions' as opposed to substantive offenses where they are `separate from the underlying offense and do[ ] not set forth elements of the offense or a greater degree of the offense charged. [Citations.]'" (People v. Wallace (2003) 109 Cal.App.4th 1699, 1702, 1 Cal.Rptr.3d 324, quoting People v. Bright, supra, 12 Cal.4th at p. 661, 49 Cal.Rptr.2d 732, 909 P.2d 1354; accord, Robert L. v. Superior Court, supra, 30 Cal.4th at p. 899, 135 Cal.Rptr.2d 30, 69 P.3d 951.) Phrased slightly differently, a penalty provision does not define a substantive offense, but "'"focus[es] on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves." [Citation.!' [Citations.]" (Wallace, at p. 1702,1 Cal.Rptr.3d 324.)
For example, Robert L. considered section 186.22, subdivision (d) (hereafter section 186.22(d)), which provides that any person who is convicted of a public offense committed for the benefit of a criminal street gang shall receive a specified penalty. The court concluded that section 186.22(d) was not a sentence enhancement "because it does not add an additional term of imprisonment to the base term; instead it provides for an alternative sentence when it is proven.... Neither is it a substantive offense because it does not define or set forth elements of a new crime. [Citation.]" (Robert L. v. Superior Court, supra, 30 Cal.4th at p. 899, 135 Cal.Rptr.2d 30, 69 P.3d 951.)
In Bright, the court concluded that section 664, subdivision (a), which provides that an attempt to commit a "`willful, deliberate, and premeditated murder' ... shall be subject to the punishment of imprisonment for life with the possibility of parole" (People v. Bright, supra, 12 Cal.4th at p. 657, 49 Cal.Rptr.2d 732, 909 P.2d 1354), "does not create a greater degree of attempted murder but, rather, conshall 'be punished by an additional term of three years. ...'" (People v. Jefferson, supra, 21 Cal.4th at p. 101, 86 Cal.Rptr.2d 893, 980 P.2d 441.) *795 statutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder" (id. at pp. 657-658, 49 Cal.Rptr.2d 732, 909 P.2d 1354). "[A] penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances. A penalty provision is separate from the underlying offense and does not set forth elements of the offense.... [Citations.] The jury does not decide the truth of the penalty allegation until it first has reached a verdict on the substantive offense charged. [Citation.]" (Id. at p. 661, 49 Cal.Rptr.2d 732, 909 P.2d 1354; see People v. Bouzas (1991) 53 Cal.3d 467, 478, 279 Cal.Rptr. 847; 807 P.2d 1076 [§ 666 (petty theft with a prior theft-related conviction) imposes a penalty and does not define a substantive offense and "is structured to enhance the punishment for violation of other defined crimes and not to define an offense in the first instance"].)
Similarly, subdivisions (b), (c)(1) and (c)(2) of section 646.9 do not define a substantive offense. Subdivision (a) sets out the elements of the crime of stalking.[8] Subdivisions (b) and (c), after referring to subdivision (a), focus on `""the criminal history of the defendant which is not present for all such ... perpetrators and which justifies a higher penalty than that prescribed for [stalking].' [Citation.]' [Citations.]" (People v. Wallace, supra, 109 Cal.App.4th at p. 1702, 1 Cal.Rptr.3d 324; see also People v. Murphy (2001) 25 Cal.4th 136, 105 Cal.Rptr.2d 387, 19 P.3d 1129 [penalties under one and three strikes laws (§§ 667, 667.71) depend on fact of the defendant's recidivism, not on an act or omission]; see also People v. Tardy (2003) 112 Cal.App.4th 783, 787, 6 Cal.Rptr.3d 24 [§ 666 gives court authority to impose felony sentence on defendant convicted of misdemeanor petty theft who has a prior theft conviction].) The effect of subdivisions (b) and (c) is to establish a higher base term for stalking when it is committed by a defendant with a particular criminal history.[9] Moreover, the jury does not consider the truth of these penalty facts until it has reached a verdict on the substantive stalking offense under subdivision (a). (See People v. Bright, supra, 12 Cal.4th at p. 661, 49 Cal.Rptr.2d 732, 909 P.2d 1354.)
We conclude that subdivisions (b), (c)(1) and (c)(2) of section 646.9 are penalty provisions triggered when the offense of stalking as defined in subdivision (a) of that section is committed by a person with a specified history of misconduct. In this case, defendant committed the crime of stalking against Hart when a temporary restraining order was in effect protecting her, after having been previously convicted of making terrorist threats (§ 422), and after he had been previously convicted of felony stalking. Thus, at the time defendant committed the single offense of stalking, his history of misconduct satisfied three separate penalty provisions, each of which required that he be subject to a greater punishment than" imposed in section 646.9(a). (§ 646.9(b), (c)(1), (c)(2).) *796 Though the single stalking offense was charged in four separate counts, defendant could be convicted of only one count of stalking. Consequently, three of defendant's four stalking convictions must be vacated. (See People v. Ryan, supra, 138 Cal.App.4th at p. 371, 41 Cal.Rptr.3d 277.) As asserted by defendant, since the court selected the count 4 conviction under subdivision (c)(2) of section 646.9 as the principal term, it is appropriate to affirm that conviction and vacate his convictions on counts 1 through 3, which involved subdivisions (a), (b) and (c)(1) of that section.[10]

II.-IV.[**]

Disposition
The convictions on counts 1 through 3 and the sentence imposed thereon are vacated. The convictions on counts 4 and 5 and sentencing on count 5 are affirmed. The matter is remanded for resentencing on count 4.
We concur, JONES, P.J., and NEEDHAM, J.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, parts II., III. and IV. of this opinion are not certified for publication.
[1] AH undesignated section references are to the Penal Code.
[2] Defendant's acts consisted of leaving Hart threatening telephone messages.
[3] The information alleged that each of the four stalking counts occurred between December 17, 2003, and December 10, 2004, and were committed against Hart with the intent to place her in reasonable fear for her safety and the safety of her immediate family.
[4] Section 654 prohibits multiple punishment for a single act or omission, where the defendant violates multiple criminal statutes as a means of accomplishing one objective and harbors a single intent. (People v. Chaffer (2003) 111 Cal.App.4th 1037, 1044, 4 Cal. Rptr.3d 441.)
[5] Stalking under section 646.9(a) is punishable in the county jail or in the state prison for 16 months, two years or three years. (§18 [unless otherwise specified, felonies generally subject to prison term of 16 months, two years or three years]; People v. Markley (2006) 138 Cal.App.4th 230, 244, 41 Cal. Rptr.3d 257.)
[6] Alternatively, defendant argues that if the subdivisions of section 646.9 define separate crimes, his count 1 conviction for stalking (§ 646.9(a)) must be vacated because subdivision (a) of section 646.9 is a lesser included offense of subdivisions (b) and (c) of that section. The People agree that subdivision (a) is a necessarily included offense of subdivisions (b) and (c) of section 646.9.
[7] "An example [of an enhancement is] subdivision (a) of section 12022.7, which provides that any person who personally inflicts great bodily injury in the commission of a felony
[8] Subdivision (a) of section 646.9 provides that those elements are: "(1) repeatedly following or harassing another person, and (2) making a credible threat (3) with the intent to place that person in reasonable fear of death or great bodily injury." (People v. Ewing (1999) 76s Cal.App.4th 199, 210, 90 Cal. Rptr.2d 177, citing People v. Carron (1995) 37 Cal.App.4th 1230, 1238, 44 Cal.Rptr.2d 328.)
[9] We recognize that the issuance of a temporary restraining order, injunction or court order referred to in section 646.9(b) does not necessarily reflect a criminal offense, but is issued to prohibit the stalking "behavior" described in section 646.9(a).
[10] In light of our decision vacating the count two conviction of stalking in violation of a restraining order (§ 646.9(b)), we need not address defendant's contention that his conviction of misdemeanor criminal contempt for willful disobedience of a restraining order (§ 166, subd. (a)(4)) must be vacated "because it is a lesser included offense of count [2] and/or because multiple convictions for the same offense violated [his] Fifth Amendment right" against double jeopardy.
[**] See footnote *, ante.