Filed 7/25/13  P. v. Hernandez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C064583 |
| Plaintiff and Respondent, | (Super. Ct. No. SF111494A) |
| v. | |
| MANUEL HERNANDEZ, | |
| Defendant and Appellant. | |

Following a jury trial, defendant, Manuel Hernandez, was convicted of one count each of stalking his ex-wife, Angela,[1] and her current boyfriend, Joe Trujillo (Pen. Code, § 646.9, subd. (a) -- counts 1 & 4),[2] stalking Angela while a temporary restraining order was in effect (§ 646.9, subd. (b) -- count 2), one count each of making criminal threats against Angela and Joe (§ 422 -- counts 3 & 4), and a misdemeanor count of contempt of

---

[1]    Because of shared and similar surnames, for the sake of clarity, we will refer to the victims and witnesses by their first names.

[2]    Further undesignated statutory references are to the Penal Code.

1

court. (§ 166, subd. (c)(1) -- count 8.) On appeal, he contends: (1) there was not substantial evidence to support the stalking and criminal threats charges as related to Joe (counts 4 & 7); (2) the consecutive sentences imposed on the stalking and criminal threats convictions (counts 2, 3, 4 & 7) violated section 654's prohibition against multiple punishment; (3) the court imposed an unauthorized sentence by selecting count 2 as the principal term; (4) in finding no mitigating circumstances, the court did not exercise informed sentencing discretion; and, (5) the convictions for stalking Angela and contempt of court (counts 1 & 8) should be vacated given his conviction for stalking Angela while a temporary restraining order was in effect. We agree that the consecutive sentences imposed on counts 3 and 4 must be stayed under section 654 and that the conviction for count 1 must be vacated in light of the conviction on count 2. In all other respects, we affirm the judgment.

FACTUAL BACKGROUND

Defendant and Angela were married in 1992 and divorced 10 years later. At the time of their marriage, Angela had two children from a previous relationship, a son and a daughter, who defendant raised as his own. Defendant and Angela also had two sons from their relationship. During the course of their relationship, defendant abused Angela and sustained battery convictions in 2001 and 2003.

After defendant and Angela's relationship ended, Angela and Joe began a relationship around 2003 or 2004 that lasted about six years. Joe moved in with Angela and the children in 2004.

In 2006, defendant came to Angela and Joe's home and argued with Angela about child support. Defendant was angry and yelling, and eventually broke a window in the house. As a result of this incident, defendant was convicted of domestic violence and Angela received a protective order against him.

On February 17, 2009, while driving home from work, Joe saw defendant driving toward the home Joe and Angela shared. Hoping to distract defendant from going to the

2

house, Joe drove away from the home. Defendant followed him for about three blocks, then reversed course and went to the home. Joe also went to the home, and when he arrived, defendant was there. There had been problems between the two in the past, arguments with a great deal of swearing and threats but no physical violence. When Joe got out of his car, defendant started swearing at him and threatening him. Joe told defendant he was calling the police. Defendant yelled, "Fuck you. I'm going to kill you. I'm going to kill your mom." Joe had heard similar threats from defendant before, without having been subjected to actual violence, so he did not think anything of defendant's threats. Joe called the police because he and Angela were "just tired of everything that was going on. We wanted to get rid of him . . . as much as we could out of our life." Joe also called the police because there was a restraining order in place against defendant.

About one week later, after a night of drinking, Angela woke up and found her daughter sleeping on the couch. Joe was in the daughter's bed. Angela yelled at him and asked what he was doing in her daughter's bed. Defendant was still groggy from the night before and had not realized he was in the daughter's bed rather than his own.

Throughout the day, Angela repeatedly tried to discuss the matter with Joe, but he would not wake up. Joe slept most of the day and could not be roused. Joe remained in bed until the afternoon when his bedroom door was kicked in and he was severely beaten by two men. Joe identified defendant as one of the assailants. He said he saw defendant's face and heard him say, "I got you now, mother fucker," and, "What did you do to my daughter?" Joe claimed the other man choked him, while defendant punched him in the face and ribs. They also slammed the door on his face several times.

Sometime between 3:00 and 4:00 p.m. Joe called Angela and told her, "[Defendant] jumped me." Angela called 911. When emergency workers arrived, they found Joe unconscious on the floor. Joe was hospitalized for a week due to his injuries.

3

He had two orbital fractures and bruising on the left side of his body. Angela stayed with Joe in the hospital for a week, and then ended their relationship.

On March 7, 2009, a few days after leaving the hospital, defendant called Angela's cell phone and said, "Bitch, once I find you, I'm going to kill you." The threat frightened Angela and she refused to return home. Knowing what defendant had done in the past and what he was capable of, the threat made Angela very afraid. She "knew he was coming after [her] next." She did not return to her home, instead she moved around and lived in different places.

On March 13, 2009, defendant called Angela again and said, "Bitch, once I find you, I'm going to kill you." Having experienced defendant's violence in the past, Angela was again very scared.

Also on March 13, 2009, more than two weeks after the assault and approximately one week after Joe was discharged from the hospital, defendant called Joe and said, "You think you're going to get me locked up. Well you're not. You fucked up." He also threatened to kill Joe "this time." This time Joe took the threat seriously because he believed defendant had recently acted on his violent threats and he was afraid defendant would do so again.

On March 31, 2009, defendant called Angela and said, "I'm going to catch you. Once I catch you, I'm going to kill you." Angela remained very afraid of defendant because of his history of violence. She believed if he caught her, he would "have done some damage." Defendant was not taken into custody until April 28, 2009.

PROCEDURAL HISTORY

Defendant was charged with stalking both Angela and Joe (§ 646.9, subd. (a) -- counts 1 & 4), stalking Angela while a temporary restraining order was in effect (§ 646.9, subd. (b) -- count 2), making criminal threats against both Angela and Joe (§ 422 -- counts 3 & 7), assault with force likely to produce great bodily injury (§ 245, subd. (a)(1) -- count 5), first degree residential burglary (§ 459 -- count 6), and misdemeanor

4

contempt of court. (§ 166, subd. (c)(1) -- count 8.) As to the burglary charge, it was further alleged the dwelling was occupied. (§ 667.5, subd. (c)(21).) It was also alleged that defendant had sustained a prior serious felony conviction (§§ 667, subd. (d), 1170.12, subd. (b)) and a prior strike conviction. (§ 667, subd. (a).) As to counts 4 through 6, it was also alleged defendant inflicted great bodily injury. (§ 12022.7, subd. (a).)

Following a jury trial, defendant was found not guilty on the assault and burglary charges, and the great bodily injury allegations were found not true. He was found guilty on all the remaining counts. In bifurcated proceedings, the jury found the prior conviction allegations true.

The court denied probation and sentenced defendant to an aggregate term of 17 years in state prison. Count 2 was designated as the principal term and the upper term sentence of four years, doubled pursuant to the strike, was imposed. On counts 3, 4 and 7, the court imposed consecutive eight-month sentences (one-third the midterm), doubled pursuant to the strike. The court imposed a five-year term for the section 667, subdivision (a) prior strike conviction enhancement. The sentence on count 1 was stayed pursuant to section 654.

## DISCUSSION

### I

Defendant contends there is not substantial evidence supporting his convictions for stalking and making criminal threats against Joe. We are not persuaded.

"In reviewing a claim of insufficient evidence, we review the record in its entirety, considering the evidence most favorably to the prevailing party, and determine whether any rational trier of fact could have found the prosecution proved its case beyond a reasonable doubt. [Citation.]" (*People v. Zavala* (2005) 130 Cal.App.4th 758, 766 (*Zavala*).) In making this assessment, we draw all reasonable inferences from the record in support of the judgment and do not weigh the evidence or decide the credibility of the witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

5

*Stalking*

Defendant argues there is not sufficient evidence of stalking because that offense requires a course of conduct established by two or more acts, and here there are not two qualifying acts. He reaches this conclusion, by claiming the February 17 threat does not qualify because Joe testified he was not frightened by defendant's threat to kill Joe and his mother; and, the alleged assault on February 26 does not qualify because the jury found defendant not guilty on that charge. Accordingly, he argues there is only one remaining qualifying act, the March 13 threat, and that is not sufficient to establish stalking. Defendant is wrong.

The elements of stalking are "(1) following or harassing another person; (2) making a credible threat; and (3) intending to place the victim in reasonable fear for her safety." (*People v. Uecker* (2009) 172 Cal.App.4th 583, 594 (*Uecker*); § 646.9.) Harassing another person is directing a "course of conduct . . . at a specific person that seriously alarms, annoys, torments, or terrorizes the person . . . ." (§ 646.9, subd. (e).) Defendant's argument relies on his parsing out each individual event and analyzing it as a discrete incident to determine whether it amounts to harassment. However, it is the entirety of the course of conduct that must be harassing, not each individual act within the course of conduct. That is, taken separately the acts need not be terrorizing or alarming, if when taken as a course of conduct, they rise to that level on a cumulative basis. (§ 646.9, subds. (e) & (f); *People v. Culuko* (2000) 78 Cal.App.4th 307, 325.) Furthermore, contrary to defendant's argument, it is not necessary that each individual act making up the course of conduct contain within it a credible threat. Rather, at some point in the course of conduct, a singular credible threat must be made. That threat may even be implicit in the pattern of conduct. In assessing the course of conduct and whether a threat occurred, we must consider the "entire factual context, including the surrounding events." (*People v. Falck* (1997) 52 Cal.App.4th 287, 298; accord, *Uecker, supra*, 172 Cal.App.4th at p. 598, fn. 10.)

6

Viewing the evidence in the light most favorable to the verdict and in its entirety as a course of conduct, rather than discrete instances of conduct, we find there is substantial evidence supporting defendant's conviction for stalking Joe.

Over the course of a number of years, defendant was repeatedly violent towards Joe's girlfriend, Angela, and had a history of fights and arguments with Joe. This history included repeated fights at Joe and Angela's home, with defendant screaming and yelling at them. As a result of one particularly violent argument at Angela's and Joe's home, there was a restraining order in place against defendant. Despite the restraining order, on February 17, defendant followed Joe for three blocks and then went to Angela and Joe's home. When Joe arrived at the home shortly thereafter, he and defendant argued, with defendant yelling and swearing at Joe. Ultimately, defendant threatened to kill Joe and his mother. Because of the restraining order and the fact that Joe and Angela were "just tired of everything that was going on. We wanted to get rid of him . . . as much as we could out of our life," Joe called the police. It was reasonable for the jury to conclude this incident was part of a pattern of conduct by defendant which Joe found seriously alarming or annoying. (See *Zavala, supra,* 130 Cal.App.4th at p. 767.)

A month later, after Joe accused defendant of severely beating him, defendant called Joe, referenced the beating accusation, and threatened to kill Joe "this time." It was reasonable from the facts of this case for the jury to infer this was a credible threat made with the intention of placing Joe in fear. At the time of the phone call, Joe believed defendant had broken into his home and severely beaten him. Defendant knew this. Regardless of the accuracy of that belief, defendant's phone call referencing the accusations and threatening the next beating would result in Joe's death sought to utilize Joe's belief to intimidate him and put him in fear. That the jury ultimately did not find defendant guilty of the assault, does not mean they could not consider Joe's belief defendant had committed the assault in determining whether defendant was harassing Joe. (See *Zavala, supra,* 130 Cal.App.4th at p. 767, fn. 5.) This evidence supported not

7

only the conclusion Joe reasonably feared defendant but also that defendant acted with the intent to induce that fear. (*People v. Falck, supra,* 52 Cal.App.4th at p. 299; *Uecker, supra,* 172 Cal.App.4th at p. 597.) Considering the entire context of the case, the history between the parties, defendant's course of conduct of following Joe, repeatedly showing up at his home in spite of a restraining order, and threatening him, it was reasonable for the jury to conclude defendant's conduct towards Joe constituted harassment, as defined in the stalking statute. Accordingly, there was substantial evidence to support the stalking conviction.

### *Criminal Threats*[3]

As to the criminal threats charge, defendant reiterates his claim that the February 17 and 26 incidents are excluded from consideration, leaving only the March 13 phone call. With no analysis of the points, defendant simply asserts in conclusory fashion, "the threat was not so unequivocal, unconditional, immediate and specific that it communicated to [Joe] a serious intention and the immediate prospect that the threat would be carried out. [Citations.] Additionally, although [Joe] testified that he was afraid, the evidence did not sufficiently establish that his fear was 'sustained.' [Citations.] Finally, [Joe's] fear was not reasonable under the circumstance when [defendant] was not guilty of the February 26 incident." We agree that the February 17 and 26 incidents cannot support the conviction for criminal threats, but disagree about the March 13 phone call.

"[T]o prove the offense of making criminal threats under section 422[,] [t]he prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant

---

**3**    When, as here, "the First Amendment is not implicated, defendant's sufficiency of the evidence challenge is evaluated under the substantial evidence test. [Citations.]" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' [Citations.]" (*In re George T*. (2004) 33 Cal.4th 620, 630.)

"[S]ection 422 requires that the communication must be sufficient 'on its face and under the circumstances in which it is made' to constitute a criminal threat. This means that the communication and the surrounding circumstances are to be considered together. . . . '[I]t is the circumstances under which the threat is made that give meaning to the actual words used. . . .' (*People v. Butler* (2000) 85 Cal.App.4th 745, 753 . . . .)" (*In re Ryan D*. (2002) 100 Cal.App.4th 854, 860.) That the threat must be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," does not mean the threat must be absolutely unequivocal, unconditional, immediate, and specific. Rather, these qualities are factors to be considered, along with all the circumstances surrounding the threat, to determine whether the threat conveyed a gravity of purpose and immediate prospect of execution to the victim. (*In re George T., supra*, 33 Cal.4th at p. 635; *People v. Bolin* (1998) 18 Cal.4th 297, 340; *People v. Smith* (2009) 178 Cal.App.4th 475, 480.) The history between the parties is also among the relevant circumstances to consider in assessing the sufficiency of the threat. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.)

Defendant and Joe had a volatile and intertwined history. Since Joe was living with defendant's ex-wife and children, defendant knew where Joe lived and had regular

9

access to the home. On at least one occasion at the home, defendant's anger during a fight escalated to violence and resulted in the issuance of a restraining order. Joe was severely beaten when someone he identified as defendant broke into his home. Defendant knew of both Joe's belief and the accusation to the police. Shortly after the beating, defendant called Angela on three separate occasions and threatened to kill her. Based on that threat, Angela was too afraid to return to the house.[4] One week after Joe was discharged from the hospital, defendant called him, referenced Joe's allegations and the beating and threatened to kill him "this time." This threat is not equivocal, conditional or ambiguous.

To the extent this threat can be challenged, it is only as to whether the threat was sufficiently immediate. "Immediate," as used in the statute, means "that degree of seriousness and imminence which is understood by the victim to be attached to the future prospect of the threat being carried out . . . ." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538, italics omitted.) "'A threat is not insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed." [Citation.]' [Citation.] . . . [T]he defendant must intend for the victim to receive and understand the threat, and the threat must be such that it would cause a reasonable person to fear for his or her safety or the safety of his or her immediate family. [Citation.]" (*People v. Wilson, supra,* 186 Cal.App.4th at p. 806.) Under the circumstances of this case, the threat to Joe met this standard. The threat was delivered by a man with a demonstrated willingness to commit violent acts, it came on the heels of continuing threats of violence to Angela, who Joe lived with, and Joe's recent release from the hospital after having been severely beaten by a person he believed was defendant. Thus, the threat was sufficiently "immediate."

---

**4**    Although at that point, Joe and Angela had broken up, but because they shared a child, they continued to have a relationship and stayed in contact.

10

There is also sufficient evidence to support the finding Joe was in sustained fear. Under the statute, "sustained" means "a period of time that extends beyond what is momentary, fleeting, or transitory. . . .  The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear. [Citation.]"  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

Joe testified he took this threat from defendant seriously.  He believed defendant had actually acted upon his earlier threats and would again.  He also called the police about the threat.  He knew defendant's violent past.  He knew defendant knew where Joe lived, regularly came into the home, had previously committed violent acts at the home, and Joe believed defendant had broken into his home to beat him.  Defendant was not in custody when the call was made, and was not taken into custody until late April.  During that time, defendant had access to Joe and his home.  It was reasonable for the jury to infer from this evidence that Joe remained in fear that defendant's threat would be carried out until such time as defendant was taken into custody.  (See *People v. Allen, supra,* 33 Cal.App.4th at p. 1156; *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.)

As for defendant's final complaint that Joe's fear was not reasonable because defendant was found not guilty of the February 26 assault, we are not persuaded.  It is true that the jury did not convict defendant of the February 26 assault.  However, whether or not defendant actually beat Joe is not the point.  The point here is that at the time, Joe *believed* defendant had beaten him.  Defendant was aware of this belief and utilized that belief to instill fear in Joe, by threatening to kill him "this time."  It was not necessary that the jury find defendant actually committed the assault against Joe to appropriately consider Joe's belief about the beating in assessing the reasonableness of Joe's fear.  Based on all the circumstances of this case, there was substantial evidence supporting the criminal threats conviction.

II

11

Defendant next contends the trial court erred in imposing consecutive sentences on the counts of stalking Angela while a restraining order was in effect (count 2), making criminal threats against Angela during the same period (count 3), stalking Joe (count 4) and making criminal threats against him during the same period (count 7).[5]  He argues the imposition of these consecutive sentences violates the section 654 prohibition on multiple punishments.  Under the specific facts of this case, we agree defendant cannot be punished for both stalking and making criminal threats against Angela, nor can he be punished for both stalking and making criminal threats against Joe.  Section 654 does not, however, prohibit defendant from being punished separately for the crimes against Angela and the crimes against Joe.

Section 654, subdivision (a) provides, in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."  Section 654 is intended "to insure that a defendant's punishment will be commensurate with his [or her] culpability."  (*People v. Perez* (1979) 23 Cal.3d 545, 552.)  The statute bars multiple punishment for both a single act that violates more than one criminal statute and multiple acts, where those acts comprise an indivisible course of conduct incident to a single criminal objective and intent.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another ground in *People v. Correa* (2012) 54 Cal.3d 331, 334, 338.)  Conversely, where a defendant commits multiple criminal offenses during a single course of conduct, he or she may be separately

---

[5]    Defendant's argument regarding the imposition of a consecutive sentence for stalking Angela (count 1) is obviated by our disposition of defendant's claim that he could not be convicted both of stalking Angela and stalking her with a restraining order in part V of this opinion, *infra*.

punished for each offense that he or she committed pursuant to a separate intent and objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 637-639.) Multiple criminal objectives may "be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts. The rule does not apply where . . . the multiple convictions at issue were indisputably based upon a single act." (*People v. Mesa* (2012) 54 Cal.4th 191, 199.) Whether multiple convictions were part of an indivisible transaction is primarily a question of fact for the trial court. (*People v. Coleman* (1989) 48 Cal.3d 112, 162; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) We review a challenge under section 654 for substantial evidence to support the trial court's determination. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.)

Stalking requires a course of conduct, that is, at least two acts, be directed at the victim. (§ 646.9, subd. (f).) Here, the conduct that constituted stalking as to each victim was part of a course of conduct consisting of multiple threats alleged to have occurred during the same time period against that same victim. As to Joe, in addition to the March 31 threat to kill Joe, the course of conduct included defendant following Joe home on February 17, arguing with him, threatening to kill Joe's mother and violating the restraining order. The conviction for stalking Joe cannot stand without the conduct which also serves as the basis for the conviction for criminal threats against Joe. In other words, as to Joe, punishing both the stalking and the criminal threats is punishing the same single act. This violates section 654.

As to Angela, the course of conduct consisted of violating the restraining order and three separate threats to kill her. It is less clear that the conviction for stalking Angela rests on the same single act as the conviction for making criminal threats against her. The jury was given a unanimity instruction as to the criminal threats. That is, they had to agree as to which threat constituted a criminal threat. That threat could be excluded from the stalking charge and there would still be sufficient acts on which to sustain a conviction for stalking. Nonetheless, we find defendant cannot be separately

13

punished for both the stalking and criminal threats against Angela, as there was no evidence presented that suggested defendant had any objective in either the criminal threats or the stalking to do anything other than frighten and threaten Angela. The prosecutor did not argue there were any other distinct intents between the offenses. Rather, the prosecutor specified defendant's intent in both stalking Angela (and Joe) and making criminal threats was to "scare, frighten, threaten." On the record before us, we can discern no separate criminal objective between the stalking and criminal threats as to each separate victim. Thus, the convictions for making criminal threats against Angela in count 3 and stalking Joe in count 4 should have been stayed under section 654.

However, there is evidence to support the conclusion reached by the court that as to each separate victim, there were separate criminal objectives. These were different victims and different specific acts were alleged to each. In threatening and stalking Angela, defendant's intent was to make her afraid. There is no evidence his purpose in threatening Angela was to make Joe afraid. Similarly, in threatening and stalking Joe, defendant's intent was to make Joe fearful. There is no evidence his intent in committing those acts was directed at making Angela afraid. Accordingly, the court correctly imposed consecutive sentences as to count 2, stalking Angela in violation of a restraining order, and count 7, making criminal threats against Joe. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)

### III

Defendant next challenges the court's selection of count 2 as the principal term, and the 17-year aggregate sentence imposed as a result of that selection. Defendant contends that the principal term must be the term which, combined with any applicable enhancements, results in the longest term of imprisonment. Defendant continues, count 2, stalking in violation of a restraining order, had the longest available term of imprisonment when considered without an enhancement. However, he claims, stalking was not an offense to which the five-year prior serious felony enhancement could attach.

14

Rather, the enhancement could only attach to a serious felony, one of the criminal threat charges. Thus, the criminal threat count, with a maximum term of three years, combined with the five-year enhancement, represented the longest possible term of imprisonment and should have been selected as the principal term. We disagree.

Under section 1170.1, subdivision (a), "when any person is convicted of two or more felonies, . . . the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for *prior convictions*, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable *specific enhancements*. . . ." (§ 1170.1, subd. (a), italics added.) The statute makes clear there are two distinct types of enhancements, those which specifically attach to the term of imprisonment for an underlying offense and those which add generally to the aggregate term of imprisonment. (*People v. Tassell* (1984) 36 Cal.3d 77, 90, overruled on a different point by *People v. Ewoldt* (1994) 7 Cal.4th 380, 401.) "In so doing, it makes it very clear that enhancements for prior convictions do not attach to particular counts but instead are added just once as the final step in computing the total sentence." (*People v. Tassell, supra,* 36 Cal.3d at p. 90, fn. omitted.)

Sentence enhancements which add generally to the aggregate term of imprisonment are those that go to the nature of the offender; that is, they are attributable to defendant's status as a repeat offender. These enhancements have nothing to do with the particular counts charged and do not attach to any particular underlying offense. By contrast, specific enhancements that attach to a particular term of imprisonment for an underlying offense are those that go to the nature of the offense. These enhancements arise from the particular circumstances of the crime and what defendant did when the offense was committed. (*People v. Coronado* (1995) 12 Cal.4th 145, 156; *People v. Tassell, supra,* 36 Cal.3d at p. 90.) These enhancements include issues such as firearm

15

use or infliction of great bodily injury. Defendant contends section 667, subdivision (a) is a specific enhancement which attaches to the current serious felony, rather than an enhancement based on his status as a recidivist. He is wrong.

Under section 667, subdivision (a), "any person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." This five-year enhancement for a prior serious felony conviction was added as part of a statutory and constitutional scheme intended to "increase sentences for recidivist offenders." (*People v. Jones* (1993) 5 Cal.4th 1142, 1147; see also *People v. Williams* (2004) 34 Cal.4th 397, 404.) The language of the statute itself makes clear the enhancement is for the prior convictions, not the circumstances surrounding the commission of the current serious felony. The only requirement related to any current offense is that at least one conviction be a serious felony. This requirement does not make the enhancement a specific enhancement attaching to the serious felony, as the enhancement is unrelated to the manner in which the particular serious felony was committed.

Here, the current serious felony offense was making criminal threats. Making criminal threats is always a serious felony offense. The section 667, subdivision (a) enhancement did not allege anything that "enhanced" the manner in which the criminal threat was made, thereby making the threat itself worthy of greater punishment. Rather, defendant is deserving of greater punishment because this is not his first serious felony; that is, because of his recidivism. The enhancement pertains to a prior offense and defendant's status as a repeat offender. Because the enhancement under section 667, subdivision (a) goes to the nature of the offender, rather than the offense, it does not attach to a particular offense. Accordingly, the court correctly computed defendant's sentence designating count 2 as the principal term.

IV

16

Defendant also challenges the sentence imposed contending the trial court "failed to exercise an informed sentencing discretion" by finding there were no mitigating circumstances. Specifically, he argues the court disregarded the evidence that defendant was a good and loving father whose children needed him, and erroneously limited its consideration of mitigating factors to those delineated in the rules of court. We disagree.

Sentencing courts have wide discretion in weighing aggravating and mitigating factors (*People v. Evans* (1983) 141 Cal.App.3d 1019, 1022) and may balance them in qualitative as well as quantitative terms. (*People v. Lambeth* (1980) 112 Cal.App.3d 495, 501.) We presume the trial court has considered all relevant criteria in deciding a defendant's sentence. (Cal. Rules of Court, rule 4.409.) Furthermore, we must affirm unless there is a clear showing that the chosen sentence was arbitrary or irrational. (*People v. Hubbell* (1980) 108 Cal.App.3d 253, 260.)

It is error for a sentencing court to disregard an undisputed factor in mitigation. (*People v. Burney* (1981) 115 Cal.App.3d 497, 505 [the trial court erroneously failed to consider circumstances in mitigation enumerated in former Cal. Rules of Court, rule 423].) "However, many alleged factors in mitigation are disputable either because they may not be established by the evidence or because they may not be mitigating under the circumstances of a particular case. Where an alleged factor in mitigation is disputable, the court may find an absence of mitigating factors and need not explain the reason for its conclusion. [Citations.]" (*In re Handa* (1985) 166 Cal.App.3d 966, 973.)

Here, the court read and considered the probation report, sentencing briefs submitted by the parties, and letters from two of defendant's sons. At the sentencing hearing, defendant and his daughter spoke. Angela also spoke at the sentencing hearing.

The court acknowledged the stormy familial relationships in the case created a difficult situation and that defendant's children loved and respected him. The court found defendant's prior record had led to the current more serious offenses, and that in particular because of his children, defendant should have worked on the problems which

17

led to this case. The court noted the various programs and opportunities defendant had been given, particularly with regard to domestic violence classes, and that he had not managed to benefit from them or to "put things right" for either himself or "[i]n a much bigger context . . . for [his] kids." The court also reflected on defendant's age, which should have come with some attendant maturity. The court recognized the children had a troubled history and while their troubles were not entirely defendant's fault, he was a significant part of their difficulties. The court also reflected on defendant's significant criminal history and the existence of a prior strike offense. Defendant's criminal history included 14 convictions, eight domestic violence cases involving Angela and at least one other woman, and two current strike offenses. In the course of 10 grants of probation, defendant had 13 probation violations and was on probation when these offenses were committed. Based on the evidence before it, the court felt compelled to give defendant the upper term.

Defendant claims this record reveals the court "erroneously limited [its] consideration of mitigating factors to those specified in the rules . . . . The court could have and should have considered [defendant's] loving relationship with his own and Angela's children, his fatherly guidance, and this need of a loving dad as mitigating factors." The court did not disregard defendant's relationships with his children. In fact, the record reveals the court considered defendant's arguments, including his relationship with his children, but ultimately disagreed with defendant's conclusion that that relationship qualified as a mitigating factor. (See *People v. Thompson* (1982) 138 Cal.App.3d 123, 127.) The mere assertion of a mitigating factor by a defendant does not establish that assertion as a fact. (*People v. Regalado* (1980) 108 Cal.App.3d 531, 538.) Defendant's relationships with his children had not led him to benefit from the multiple opportunities he had been given to address his behavior and defendant was a significant contributing factor to his children's difficulties. Considering these facts, and in view of defendant's lengthy criminal history, multiple domestic violence offenses against the

18

mother of his children and at least one other woman, and failure to take advantage of multiple grants of probation and self-help programs, the court did not abuse its discretion in finding that a father's love for his children, and their love for him, was not a mitigating factor under the circumstances of this case.

V

Relying on *People v. Muhammad* (2007) 157 Cal.App.4th 484, 494 (*Muhammad*), defendant contends we should vacate his conviction for stalking under section 646.9, subdivision (a) (count 1), in light of his conviction for stalking in violation of a restraining order under section 646.9, subdivision (b) (count 2). The People properly concede that the conviction under section 646.9, subdivision (a) must be vacated.

Although defendant argues that stalking is a lesser included offense of stalking in violation of a restraining order, it is not. Rather, under section 646.9, there is a single offense of stalking. The elements of the substantive offense of stalking are set out in section 646.9, subdivision (a). When that offense is committed under specified circumstances, the penalty provisions of subdivisions (b) and (c) are triggered. (§ 646.9, subds. (b) & (c); *Muhammad*, *supra,* 157 Cal.App.4th at p. 494.) These increased penalties are not substantive elements of the offense. (*Id.* at pp. 493-494.)

In this case, defendant committed the crime of stalking against Angela when a temporary restraining order was in effect protecting her. "Thus, at the time defendant committed the *single offense* of stalking, his history of misconduct satisfied" a separate penalty provision, which "required that he be subject to a greater punishment than imposed in section 646.9[, subdivision] (a). [Citation.] Though the single stalking offense was charged in [two] separate counts, defendant could be convicted of only one count of stalking." (*Muhammad*, *supra,* 157 Cal.App.4th at p. 494, original italics.)

In accordance with *Muhammad*, subdivisions (a) and (b) of section 646.9 do not create separate criminal offenses. As the same conduct forms the basis for the two charges, defendant cannot be convicted of having violated both subdivisions. Since count

19

2 was selected as the principal term, it is appropriate to affirm that conviction and vacate defendant's conviction on count 1 for violation of section 646.9, subdivision (a).

Defendant also contends his conviction for misdemeanor contempt (§ 166, subd. (c)(1)) must be vacated as it is a lesser included offense of stalking in violation of a restraining order. The reasoning set forth above also controls the result on this issue.

Defendant's argument here rests on the assumption that section 646.9, subdivision (b) defines a distinct substantive offense of stalking in violation of a restraining order. As above, it does not. (*Muhammad*, *supra,* 157 Cal.App.4th at p. 494.) "The provisions relating to the violation of a restraining order do not define a crime. They merely create a punishment enhancement." (*People v. Kelley* (1997) 52 Cal.App.4th 568, 576, fn. omitted.) A penalty provision is not an element of the crime. (*Muhammad*, *supra,* 157 Cal.App.4th at p. 494.)

A defendant may not be convicted of an offense that is included within another offense. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227 (*Reed*).) To determine whether one offense is necessarily included within the other, we look to the statutory elements of the offenses.[6] "[I]f the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." (*Reed, supra*, 38 Cal.4th at p. 1227.)

The statutory elements of stalking are: (1) the defendant willfully and maliciously harassed or willfully, maliciously, and repeatedly followed another person; (2) the defendant made a credible threat with the intent to place the other person in reasonable fear for his or her safety or for the safety of his or her immediate family; and (3) the

---

[6]     Where, as here, the challenge is to a charged offense, we do not look to the accusatory pleadings. The pleadings are relevant only when the question is whether a defendant may be convicted of an uncharged crime. (*Reed, supra,* 38 Cal.4th at pp. 1228–1231.)

20

defendant's conduct was not constitutionally protected. (§ 646.9, subds. (a), (f), (g).) The statutory elements of violating a court order are: (1) a court lawfully issued a written order; (2) the defendant knew about the court order and its contents; (3) the defendant had the ability to follow the court order; and (4) the defendant willfully violated the court order. (§ 166.)

Plainly, the statutory elements of stalking do not include all the elements of violating a restraining order. Accordingly, the crime of stalking can be committed without also violating a court order. Therefore, violation of a court order is not a lesser included offense of stalking.

## DISPOSITION

The conviction for count 1 is vacated. The consecutive sentences on counts 3 and 4 are stayed pursuant to section 654. The trial court is directed to prepare an amended abstract of judgment reflecting these modifications and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

    NICHOLSON    , J.

We concur:

    BLEASE    , Acting P. J.


    DUARTE    , J.

21