Filed 5/15/14  P. v. Aguilar CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B247118 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. GA085021) |
| RUDOLPH AGUILAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Janice Claire Croft, Judge.  Affirmed in part, reversed in part.

Laurie Wilmore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

Rudolph Aguilar was tried on two counts of assault, based on alternate theories under Penal Code section 245, former subdivision (a)(1).[1] He was convicted on both theories: assault with a deadly weapon and assault by means of force likely to produce great bodily injury. On appeal, he argues the jury was not properly instructed on the alternative theories and that the error was prejudicial.

Appellant also argues, and respondent concedes, that the two convictions were impermissible since both arose out of a single continuous course of conduct. Appellant argues both convictions must be reversed. His alternative argument is based on the fact that assault with a deadly weapon qualifies as a serious felony, but assault by means of force likely to produce great bodily injury does not. He argues we must reverse his conviction in count 1 for assault with a deadly weapon because the jury was not asked to make a finding of the predicate fact that he used a deadly weapon. Respondent argues that we should reverse only count 2, assault by means of force likely to produce great bodily injury.

We find no instructional error. We reverse the conviction of count 2, and otherwise affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

On the evening of December 14, 2011, Jeffrey Lotz was homeless and preparing to go to sleep beside train tracks near the intersection of North Huntington Drive and Santa Anita Avenue in Arcadia. Earlier that evening he had been with appellant, who also was homeless, behind bushes at a nearby carwash. Appellant came out from around a bush and told Mr. Lotz that he had to move. Mr. Lotz asked what was wrong.

---

[1] Statutory references are to the Penal Code. "Effective January 1, 2012 former subdivision (a)(1) of section 245 was divided into two separate and distinct subdivisions: section 245, subdivision (a)(1), now prohibits assault with a deadly weapon or instrument other than a firearm, and new subdivision (a)(4) prohibits assault by means of force likely to produce great bodily injury. (Stats. 2011, ch. 183, § 1.)" (*People v. Brown* (2012) 210 Cal.App.4th 1, 5, fn. 1 (*Brown*).)

Appellant said he was in his spot, and could not sleep there.  Mr. Lotz said that he had been given permission by appellant to sleep in that location.  Appellant repeated that Mr. Lotz had to move.  Mr. Lotz began to gather his belongings, which were near a four foot by six foot concrete electrical box with a metal cover.  The two men used the box to store items.  Appellant was standing next to a two inch by one inch piece of wood, 39 inches long.

Appellant picked up the piece of wood and "started slamming it" on the metal electrical box "right next" to Mr. Lotz.  Mr. Lotz asked appellant to stop, saying that he was leaving.  Appellant hit the box again, and said Mr. Lotz was not moving fast enough.  Mr. Lotz looked up, and was struck in the head by appellant, who was agitated and yelling.  Mr. Lotz was struck on the hairline, his eye was grazed, and he was cut just below his right eye.  The stick broke on the first blow.

Mr. Lotz asked appellant what he was doing.  Appellant repeated his demand that Mr. Lotz get out, saying that he was not moving fast enough.  Mr. Lotz looked up and put his hand up.  Appellant swung again, hitting Mr. Lotz's hand, deflecting off, and hitting Mr. Lotz on the left cheek.  Mr. Lotz told appellant his hand was broken, to which appellant replied, "'Good.'"  Mr. Lotz got up, walked out to the sidewalk and flagged down police officers.  He received seven stitches at his hairline and six just below his right eye.  Vision in his right eye remained blurry.  His ring finger was broken and was permanently bent.

Arcadia police officers Jeffrey Stark and Brian Long were directed by Mr. Lotz to the location of the assault.  He identified appellant as his assailant.  Appellant, whom Officer Stark knew from previous contacts, was at the scene.  A substance that appeared to be blood was on his clothing.  He was detained by the officers.  Officer Cameron Link took over the investigation at the scene.  A big piece of wood was found propped up on the crossing arm at the railroad crossing.  Officer Stark described it as a two-by-four with a rugged texture.  It appeared to have blood on the jagged edge.  It was photographed and taken into evidence.  Mr. Lotz identified it as the piece of wood with which appellant had struck him.

3

Appellant testified in his own defense.  He admitted a dispute with Mr. Lotz about sleeping space near the railroad tracks during which he broke the piece of wood by hitting it against the electrical box.  But he denied striking Mr. Lotz.  He claimed that Mr. Lotz moved around while on the ground, leaned over, and cut himself with the stick.  He said the blood on his clothing was his own, from scratching himself during a yard work job, and then reopening the wound every time he took a cigarette and lighter out of his pockets.

The jury convicted appellant on both counts 1 and 2.  The trial court returned a true finding of an allegation that appellant had a prior strike serious felony conviction, pursuant to sections 1170.12, subdivisions (a)-(d) and 667, subdivision (a)(1).  The court also found appellant in violation of probation in case No. GA077961.  The court denied appellant's motion to strike the prior conviction.  He was sentenced to a term of 11 years in state prison, consisting of the middle term of three years on count 1, doubled to six years due to the strike prior (section 1170.12, subdivision (a)-(d)), plus a five-year enhancement under section 667, subdivision (a)(1).  Appellant filed a timely appeal.

## DISCUSSION

### I

Appellant was convicted under both forms of assault defined in section 245, former subdivision (a)(1):  assault with a deadly weapon, and assault with force likely to produce great bodily injury.  Assault with a deadly weapon is a serious felony for purposes of the Three Strikes law.  (§ 1192.7, subd. (c)(31).)  But assault likely to produce great bodily injury is not a strike offense.  (*People v. Fox* (2014) 224 Cal.App.4th 424, 434, fn. 8.)

Two categories of deadly weapons are included under section 245.  The first are "objects that are 'deadly weapons as a matter of law' such as dirks and blackjacks because 'the ordinary use for which they are designed establishes their character as such. [Citation.]" (*People v. Brown*, *supra*, 210 Cal.App.4th at p. 6.)  The second includes

4

"objects, [which] while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury.' [Citations.]" (*Id*. at pp. 6–7.)

Appellant's primary claim on appeal is that the trial court's instruction with CALJIC No. 9.02 combined the two forms of the offense, and thus eliminated elements of each, violating his constitutional right to due process.

As given CALJIC No. 9.02 read: "Defendant is accused in Counts 1 and 2 of having violated section 245, subdivision (a)(1) of the Penal Code, a crime. [¶] Every person who commits an assault upon the person of another with a deadly weapon *or* by means of force likely to produce great bodily injury is guilty of a violation of section 245, subdivision (a)(1) of the Penal Code, a crime. [¶] A 'deadly weapon' is any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury. [¶] 'Great bodily injury' refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm. [¶] In order to prove this crime, each of the following elements must be proved: [¶] 1. A person was assaulted; and [¶] 2. The assault was committed with a deadly weapon or instrument, *or* by means of force likely to produce great bodily injury." (Italics added.)

Appellant argues that each of the two theories of assault should have been given in separate instructions. He contends the result of combining the two in a single instruction was to allow the jury to find appellant used a deadly weapon as charged in count 1 by relying only on evidence of force. Similarly, he asserts that as to count 2, use of force likely to produce great bodily injury, the jury could have found appellant used a deadly weapon without considering the requisite force.[2]

---

[2] Appellant also points out that trial courts are encouraged to use the CALCRIM pattern instructions rather than the CALJIC instructions. While that is so, it is not error to use the latter. (*People v. Thomas* (2007) 150 Cal.App.4th 461 (*Thomas*).) As in *Thomas*, here there is no record of an objection by either party to the use of CALJIC instructions. The *Thomas* court held the "Judicial council's adoption of the CALCRIM instructions did not render any of the CALJIC instructions invalid or 'outdated,' as appellant claims. CALJIC instructions that were legally correct and adequate on December 31, 2005, did

5

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner. [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.)

In light of the evidence presented here, we conclude there is no reasonable likelihood the jury applied the instruction in the manner suggested by appellant. The Supreme Court in *People v. Aguilar* (1997) 16 Cal.4th 1023 (*Aguilar*) explained that often the distinction between the two types of assault is not significant. "Ultimately (except in those cases involving an inherently dangerous weapon), the jury's decisionmaking process in an aggravated assault case under section 245, subdivision (a)(1), is functionally identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used. As the Court of Appeal reasoned in [*People v.*] *Davis* [(1996)] 42 Cal.App.4th 806, '[A]ll aggravated assaults are ultimately determined based on the force likely to be applied against a person.' (*Id.* at pp. 814–815.)" (*Aguilar,* at p. 1035.)

The evidence was that appellant used a 39-inch-long piece of broken wood to hit Mr. Lotz more than once on the head. That evidence established that the stick was a deadly weapon as defined in former section 245, subdivision (a) and charged in count 1, and that appellant used force likely to cause great bodily injury as charged in count 2. The jury was adequately instructed on these elements. There is no reasonable probability that the jury applied CALJIC No. 9.02 in an impermissible manner. In light of our conclusion that there was no instructional error, appellant's arguments regarding prejudice are moot.

---

not become invalid statements of the law on January 1, 2006. Nor did their wording become inadequate to inform the jury of the relevant legal principles or too confusing to be understood by jurors. The Judicial Council's adoption of the CALCRIM instructions simply meant they are now endorsed and viewed as superior. No statute, rule of court, or case mandates the use of CALCRIM instructions to the exclusion of other valid instructions." (*Id.* at pp. 465–466.)

6

Appellant cites the Bench Notes to CALCRIM No. 875 on assault in violation of section 245 to argue the version of CALJIC No. 9.02 given here should have been modified to follow the CALCRIM instruction. The note cited states a trial court should use separate paragraphs for each of the two theories of assault.[3] Appellant reiterates that giving CALJIC No. 9.02 without modifying it to provide separate paragraphs for the two theories of assault, as in CALCRIM No. 875, allowed the jury to find appellant used a deadly weapon by relying on evidence of force alone, and to find him guilty of count 2 based on evidence that a deadly weapon was used without consideration of force.

As we have concluded, the modification urged by appellant was not required. CALJIC No. 9.02 correctly instructed the jury on the separate theories of assault, which in this case were established by identical evidence.


II

Appellant argues, and respondent concedes, that he was improperly convicted of two aggravated assault crimes based on a single course of conduct.

Section 245, former subdivision (a)(1) defined "'only one offense, to wit, "assault upon the person of another with a deadly weapon or instrument [other than a firearm] or by means of force likely to produce great bodily injury . . . ." The offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon.' [Citation.]" (*People v. McGee* (1993)

---

[3] The bench note from the version of CALCRIM No. 875 in effect in 2012 when the trial was conducted stated "[g]ive element 1A if it is alleged the assault was committed with a deadly weapon other than a firearm . . . Give 1B if it is alleged that the assault was committed with force likely to produce great bodily injury. (See Pen. Code, § 245(a).)" (CALCRIM No. 875 (2012 ed.), bench notes, pp. 670–671.) Element 1A stated: "<Alternative 1A—force with weapon> [¶] [1. The defendant did an act with (a deadly weapon other than [one of several enumerated firearms]) that by its nature would directly and probably result in the application of force to a person;]". (CALCRIM No. 8.75, p. 668.) Alternative 1B of CALCRIM No. 875, force without weapon, read: "[1A. The defendant did an act that by its nature would directly and probably result in the application of force to a person, and [¶] 1.B. The force used was likely to produce great bodily injury;]." (*Ibid.*)

15 Cal.App.4th 107, 114 (*McGee*).) *McGee* concluded the defendant convicted of violating section 245, subdivision (a)(1) could also have an enhancement for use of a deadly weapon under section 12022, subdivision (b). It emphasized that former subdivision (a)(1) defined only one offense. "If prosecutors were permitted to divide section 245, subdivision (a)(1) into two separate offenses regardless of the defendant's conduct, as did the prosecutor in this case, similarly situated defendants who assaulted their victims with deadly weapons other than firearms and were charged with violating section 245, subdivision (a)(1) could receive disparate punishment depending solely upon the language used in the pleadings. The one accused of assault with a deadly weapon would not be subject to the enhancement under section 12022, subdivision (b) while the one accused of assault by means of force likely to cause great bodily injury would be subject to the additional punishment. This is an absurd and unjust result which is inconsistent with the legislative intent in enacting sections 245, subdivision (a)(1) and 12022, subdivision (b)." (*Id.* at p. 117.)

Appellant's convictions of violating section 245, former subdivision (a)(1), both by use of a deadly weapon and by the use of force likely to cause great bodily injury, violate the rule that "multiple charges and multiple convictions can be based on a single criminal act, *if the charges allege separate offenses.* (*People v. Ryan* (2006) 138 Cal.App.4th 360, 368.)" (*People v. Muhammad* (2007) 157 Cal.App.4th 484, 490, italics added (*Muhammad*).) Here the charges alleged a single offense, as explained in *Aguilar*, *supra*, 16 Cal.4th at pp. 1036–1037 and *McGee*, *supra*, 15 Cal.App.4th at p. 117. The *Muhammad* court concluded that three of the defendant's four stalking convictions (charged in separate counts) had to be vacated because he could be convicted of only a single offense of stalking. (*Muhammad*, at p. 494.) For the same reason, one of appellant's convictions of violating section 245 must be reversed.

The issue, then, is whether we must reverse count 1, the deadly weapon conviction, or count 2, the use of force conviction. The first is a serious felony which qualifies as a strike (§ 1192.7, subd. (c)(31)), while the second, assault by means likely to produce great bodily injury, is not. (*People v. Fox* (2014) 224 Cal.App.4th 424, 434.)

8

We may consider admissible evidence from the entire record to determine whether the evidence established a separate basis to conclude the offense was a strike because the assault was committed by personal infliction of great bodily injury on a person, which is a strike under section 1192.7, subdivision (c)(8). (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.)

Here, CALJIC No. 9.02 informed the jury that it could convict appellant if it found he committed assault by means of force likely to produce great bodily injury. The jury was instructed, "'Great bodily injury' refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm." The evidence established that Mr. Lotz suffered great bodily injuries as a result of the blows inflicted by appellant. Thus in order to convict appellant on count 2, the jury had to find that he used force likely to produce great bodily injury. This finding also supports the finding that appellant used a deadly weapon, which was defined in the instruction as "any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury."

Where a defendant is improperly convicted of two offenses arising out of the same act, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction on the other offense must be reversed. (*People v. Sanders* (2012) 55 Cal.4th 731, 736 [discussed in the context of a greater and a necessarily lesser included offense].) The evidence here supports the verdict on count 1, assault with a deadly weapon. We affirm that count and reverse the conviction on count 2.

## DISPOSITION

The conviction on count 2 and the sentence imposed on that count are vacated. The conviction on count 1 and the sentence on that count are affirmed. The superior court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.