Filed 7/17/24  P. v. Casity CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE, | C097719 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CR31815) |
| v. | |
| RICHARD DOUGLAS CASITY, | |
| Defendant and Appellant. | |

Defendant Richard Douglas Casity appeals from his convictions for stalking, stalking in violation of a court order, disobeying a domestic relations court order, and making criminal threats.  According to Casity, he should have been convicted of only one count of stalking because both counts involved the same conduct.  He further argues his punishment for the disobeying a domestic relations court order count should have been stayed under Penal Code section 654.[1]  Finally, Casity contends part of his sentence is

---

[1]     Undesignated statutory references are to the Penal Code.

1

unauthorized because the trial court imposed the wrong midterm sentence. We agree that Casity should only have been convicted of one count of stalking and that section 654 applies. We thus reverse the conviction on count I and will remand the matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Casity has two adult daughters, N. and R.[2] R. is permanently disabled and has a full-time caregiver. N. is in the military and has a son who is a minor. N. started dating M. in 2020 and the two married in April 2022.

In October 2021, N., N.'s son, M., R., and R.'s caregiver were all living in N.'s house. N. was deployed to the Middle East that month for four months, and M. had temporary custody of N.'s son. Casity also stayed in the home for about three weeks in October and November 2021. N.'s son and M. eventually went to stay at his parents' house.

While N. was in the Middle East, Casity seemed "angry" with M. At one point, Casity sent a text to R.'s caregiver that contained threats against M. Casity repeatedly told N. he did not like M. and sent hundreds of messages to N. threatening and disparaging M. Casity also made over 20 Facebook posts disparaging M. N. feared for M.'s safety, especially since she interpreted Casity's comments to mean he might harm M. after she returned from deployment. Casity also told N.'s mother he planned to commit murder-suicide with R., R.'s caregiver, and himself.

In November 2021, Casity sent text messages to N.'s mother complaining about his lack of contact with N.'s son. Casity also complained about M., saying M. had disrespected him. Casity messaged: "You better talk to your daughter because I am not playing. What I will do will make the paper and that is a promise. Keep him from me. I

---

[2] To protect their privacy, we refer to the victims with the first initial of their first names only. (Cal. Rules of Court, rule 8.90.)

2

am blood. When I am done, she is not going to want to come back here." He also messaged: "I am pissed. I can't take my grandson anywhere. It is okay. If he was smart, he would get [a] restraining order on me. But he has no idea what I might do. Fucking little disrespectful . . . . I don't give a fuck about his dad or going to jail. You should tell him he better watch his ass because when I make a move, he is going to wish I hadn't for sure."

N.'s mother feared for everyone's safety. She forwarded the messages to N. and to M. M. began to fear for his own and his father's safety.

On November 15, 2021, M. filed for a domestic violence restraining order for himself. A trial court issued a temporary restraining order, and it was served on Casity in early December 2021.

Although M. had no contact with Casity during December, Casity continued sending messages that threatened M. At one point, Casity messaged N.'s mother: "[Y]ou might even want to warn him. . . . [¶] . . . [¶] . . . I say on my life, he will learn a lesson and that is all I got to say. . . . Don't worry, I am not going to kill him. But when I am done, you watch, he will never be the same. [¶] . . . I have got tumors in my head. . . . I have got nothing to lose." Casity also sent Facebook messages to N. complaining about the restraining order and telling her he had bought two rifles. In N.'s experience, Casity did not normally own firearms. Casity also told N. he would offer his motorcycle, which was stored at N.'s home, to anyone willing to hurt M.

N. returned home in February 2022, and her son and M. both moved back into the house. Later that month, M. met with Casity in a bar to try to resolve the tension. While there, Casity called M. a homosexual and "possibly a child molester." Casity also said he had previously pointed a rifle with a scope at M. at N.'s house. M. said he was not afraid to fight Casity, but he never threatened to harm Casity. Casity stormed out of the bar. That same day, Casity also exchanged text messages with M., with Casity warning he was not to be messed with. Casity threatened to attempt to frame M. for child

3

pornography. He also had "Hells Angel friends," and he might give out the address of M.'s father.

Later that month, Casity sent Facebook messages to N. threatening to post flyers saying M. was a homosexual and a child molester.

On March 22, 2022, the court issued a restraining order, prohibiting Casity from contacting M. directly or through a third party for three years.

In April 2022, Amador County Social Services Adult Protective Services (APS) visited N.'s house regarding R. On April 28, 2022, Casity told R.'s caregiver that he blamed N. and M. for the APS visit, and he threatened to "ruin a lot of lives" if APS took R. He also said he would "kick[ ] any door and plan on the shooting." The caregiver showed the messages to N. and M. During trial, M. testified he could not remember exactly when he received the messages, but it might have been in May 2022, soon after Casity sent them to the caregiver.

On May 3, 2022, Casity was served with the three-year restraining order issued on March 22, 2022.

Later in May 2022, N. was deployed to Europe, and her son and M. accompanied her.

On June 4, 2022, Casity posted on Facebook that he did not like M., saying, "you think I'm going to let this go on much more? If you guys were here, I would end this real quick." He posted three other similar threats later that month, saying he would push M. off the Grand Canyon, that a piece of paper was not going to keep him away, and he could not wait until M. returned from Germany. N. blocked Casity on Facebook.

In July 2022, while N. and her family were still in Europe, Casity sent multiple e-mails to N. He said he was "bi[d]ing his time" until they got back, and he was full of hate and would "teach [M.] a lesson." He promised to "make it hell for [M.]," and said he would "show up out there." Casity had posted pictures of a passport application, leading N. to fear he intended to come to Europe to harm her family.

4

Casity also made threats against an APS social worker.

In October 2022, a jury found Casity guilty of stalking M. from November 11, 2021, through May 3, 2022 (§ 646.9, subd. (a); count I), stalking M. in violation of a court order from June 4 through July 10, 2022 (§ 646.9, subd. (b); count II), disobeying a domestic violence restraining order from May 3 through July 10, 2022 (§ 273.6, subd. (a); count III), and making criminal threats as to the APS social worker (§ 422, subd. (a); count IV). As to counts I, II, and IV, the jury also found the crimes involved great violence, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness.

In November 2022, the trial court sentenced Casity to state prison for an aggregate term of four years four months, as follows: three years for count I (the middle term), eight months for count II (one-third the middle term), eight months for count IV, and one year concurrent for count III. The court stayed execution of the sentence and ordered four years of probation. The following month, Casity admitted violating probation, and the trial court revoked probation and executed the sentence.

## DISCUSSION

### I

### Stalking Convictions

Casity contends he should only be convicted of one count of stalking because his conduct was continuous with no interruption. The People respond there was a substantial time break between the conduct underlying each stalking conviction and that Casity's conduct can be separated into two time periods separated by the distinct event of having been served with a restraining order. We agree with Casity.

Casity was convicted of two counts of stalking. In count I, Casity was found guilty of stalking between November 11, 2021, and May 3, 2022 (§ 646.9, subd. (a)), and in count II he was found guilty of stalking in violation of a court order between June 4 and July 10, 2022 (§ 646.9, subd. (b)).

5

"Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking." (§ 646.9, subd. (a).) The statute defines " 'harasses' " as engaging in a "knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (§ 646.9, subd. (e).) " [C]ourse of conduct' " is defined as "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (§ 646.9, subd. (f); see also *People v. Chilelli* (2014) 225 Cal.App.4th 581, 586 [stalking is a continuous course of conduct crime].)

As courts have explained, the stalking statute defines a single offense but provides different penalties for simple stalking (§ 646.9, subd. (a)) versus stalking in violation of a protective court order (§ 646.9, subd. (b)) or the other aggravated stalking offenses set out in section 646.9, subdivision (c). (*People v. Muhammad* (2007) 157 Cal.App.4th 484, 490-492, 494.) As such, typically a defendant cannot be convicted of multiple counts of stalking when the counts are based on the same behavior.

For example, in *Muhammad*, the defendant was convicted of stalking (§ 646.9, subd. (a)), stalking in violation of a restraining order (§ 646.9, subd. (b)), stalking with a prior terrorist threats conviction (§ 646.9, subd. (c)(1)), and stalking with a prior felony stalking conviction (§ 646.9, subd. (c)(2)). (*People v. Muhammad, supra*, 157 Cal.App.4th at p. 486.) Each of the four counts was based on the same course of harassing conduct the defendant committed against the victim between December 17, 2003, and December 10, 2004. (*Id.* at p. 489.) The appellate court agreed with the defendant that he could only be convicted of one count of stalking because subdivisions (b) and (c) are "penalty provisions triggered when the offense of stalking as defined in subdivision (a) of that section is committed by a person with a specified history of

6

misconduct." (*Muhammad,* at p. 494.) As such, he only committed a single stalking offense.

The People argue that unlike *Muhammad*, Casity's two stalking convictions were based on Casity's harassing behavior during two periods, one before and the other after service of the restraining order on May 3, 2022. They contend that count I addresses the time period before service of the restraining order (November 11, 2021, through May 3, 2022), and count II addresses conduct occurring after service of the restraining order (June 4 through July 10, 2022). The evidence showed Casity sent threatening texts to R.'s caregiver on April 28, 2022. The caregiver showed the messages to N. and M. soon after, although M. could not remember exactly when he saw them. Then, on May 3, 2022, the three-year protective order was served on Casity. And, later that month, N. moved to Europe with her son and M. There was no evidence Casity engaged in any additional harassing conduct until he made threatening Facebook posts starting on June 4, 2022, and then his harassing e-mails in July 2022. However, while the three-year restraining was not served on Casity until May of 2022, a temporary restraining order had been in place since December of 2021, yet Cassity's conduct remained unabated. In both time periods, Casity's harassing messages referenced and expressed hostility toward the orders. In a message dated December 14, 2021, or December 15, 2021, Casity states: "Family filing a f****** restraining order on me f****** retarded are you all it is a piece of paper you think it's going to scare me away a piece of f****** paper or for real f*** I done bought two rifles." Similarly, in a February 15, 2022, message Casity states: "Bottom line is u broke the restraining order not me ok . . . ." Then on June 17, 2022, subsequent to service of the three-year restraining order, Casity sent the following message: "And I hope you never come back because I'll be waiting I know not to say nothing I raise my voice or anything that punk could go get another restraining order take a piece of paper is going to keep me away." And again on July 10, 2022: "I'm a teach him a lesson not going to say what I'm going to do cuz like a little b**** he'll go get

another restraining order but I'm going to teach him a f***** lesson . . . ." Thus, it appears that the conduct was consistent, irrespective of the act of service of the three-year order in May of 2022.

The People also contend that a nearly five-week break in Casity's harassing behavior between the end of April 2022 and June 2022 was significant and indicated that one continuous course of stalking had ended and a new one had begun. We do not conclude the same.

We do not believe that the absence of harassing communications in May 2022 suffices to show that there were two distinct courses of conduct. "[B]y its nature," a continuous course of conduct "may stop and start." (*People v. Rae* (2002) 102 Cal.App.4th 116, 124.) Rather, the nature and apparent objective of Casity's harassing behavior—expressing hostility to M.—were the same over the course of both time periods charged. (See § 646.9, subd. (f) [defining " 'course of conduct' " as "two or more acts occurring over a period of time, however short, *evidencing a continuity of purpose*" (italics added)].) These facts thus reflect a single, uninterrupted course of conduct spanning from November 2021 through July 2022. We will thus reverse the conviction on count I.

## II

## Application of Section 654

Casity next argues the violation of the court order charged in count III was part of the same course of conduct as was charged in count II, and therefore his punishment for the offense in count III must be stayed pursuant to section 654. The People properly concede that section 654 applies but ask us to remand the matter for resentencing. We agree with the People.

Section 654 prohibits multiple punishments for a single criminal act (*People v. Jones* (2012) 54 Cal.4th 350, 360) and for multiple acts that comprise an "indivisible course of conduct" (*People v. Hester* (2000) 22 Cal.4th 290, 294). " '[A] court acts in

8

"excess of its jurisdiction" and imposes an "unauthorized" sentence when it erroneously stays or fails to stay execution of a sentence under section 654.' " (*People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1004, fn. 2.)

Both parties acknowledge counts II and III both involve a single criminal act, namely Casity violating the protective order served on May 3, 2022. There is no evidence that Casity's course of conduct during these offenses was motivated by a separate intent or objective. The appropriate remedy is to vacate his sentence and remand the matter for a full resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.)

Given that we are remanding the matter for a full resentencing, we need not address Casity's argument that part of his sentence is unauthorized because the trial court incorrectly imposed (1) a three-year middle term sentence on count I when the middle term is actually two years, and (2) an eight-month sentence on count II when one-third of the middle term is actually one year.

### DISPOSITION

Casity's conviction on count I is reversed. We will vacate Casity's sentence and remand the matter for a full resentencing hearing, consistent with this opinion. The trial court is directed to prepare an amended abstract of judgment following the new sentencing hearing and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


                                                /s/
                                      EARL, P. J.

We concur:

   /s/
ROBIE, J.

   /s/
FEINBERG, J.